Well, if I got it right, I think we now are ready for the case that I previously announced, Turner v. Middle Rio Grande Conservancy. Mr. Gunn, are you now ready? Yes, Your Honor. Were you shocked before? I wasn't in here, so. Well, you weren't in here. We were really shocked. Now your case is called. No, I'm a fellow. Inadvertently. Please, we're ready to hear from you. May it please this honorable court, may it please my esteemed colleagues, I want to first start with an acknowledgment, a candid acknowledgment of this court of the uphill battle, the steep uphill battle that I face in my conversation with you here today. In the tradition of the ancient Greeks, I believe that the correct place to start in this instance would be with concessions and conceding that when it comes to the law, that certainly what my esteemed colleagues are going to tell you about what the law says in its current form is correct. And they are. I thought you were going to tell us that in the tradition of the ancient Greeks, like the Mothernese, you were going to go to the beach and put pebbles in your mouth. Nothing that extreme, Your Honor.  No, not that extreme, Your Honor. But to the point, I'm here today to make the plea on behalf of a client for what the law could or should be. And I'm going to, as our briefing points out, talk about, in terms of logic, why this is a potential for this court to examine and certainly in terms of our concepts of justice and fair play and allowing citizens to enjoy the constitutional rights that they do, why it's important for this court to take a look at it. Certainly, and I'd like to acknowledge first one of the truest points, I think, that appears in my opposing party's brief and concede this. The last page in their conclusion or next last page, page forty nine. They discuss that statutes of limitations are not trivial and that they are not and that they are essential or vital. I believe it's the word they use for the orderly administration of justice. And I couldn't agree more. But in that contained in that is the word justice. And it requires the administration of justice, not the administration of just legal process, but the administration of justice. And it is in that interest today that I discussed the uphill climb that I face. Perhaps at this juncture, also some some lawyer soul bearing is in order for my background in this case. Dr. Turner, the appellant in this case, was my first client out of law school a little over 10 years ago. I wasn't involved in this case other than this was the first deposition I ever took. That stuff that's not contained in the record and not really secular to why we're here today. But give some background. I actually left the state and came back to the conclusion of the appellate case. And the case ultimately went through the ACLU and finally found its way to my brand new law firm just started. And we did take the case up and we did file the complaint. Now, because of exigent circumstances, we stepped out of the case. But I'm back here again on this case because of a fondness for the client and an absolute fondness for justice. As I discussed, I think that that's where we are, certainly in looking at heck, which is where the focal point of my discussion with the court is going to be today. And can I just ask a threshold question first? Your claims on appeal, they essentially boil down to this First Amendment claim, is that right? That's correct, Your Honor. Okay. That's correct. And I will discuss, to some extent, the malicious prosecution, vindictive prosecution, and this court's, this circuit's law on that point. But to the extent that they infringe on the First Amendment issue, right? That's correct, Your Honor. Okay. Again, Mayor Culpa, that probably isn't the cleanest complaint that my brand new law firm has turned out. I know I have certainly done better complaints. My law partner helped on that one. Don't worry about it. Just tell us about your case. Well, and going back to heck, certainly my reading of heck, nothing in heck would serve to prohibit the expansion of heck into this context. I think there are very good reasons why it should. But nothing in that case, in the orderly administration of justice, would prohibit the application of heck to this case. And that's ultimately what we're arguing about here today. Certainly at the time that heck was decided, that body of law didn't exist. That tolling, in that instance of a criminal prosecution, did not exist. What we're asking for here today, and we believe that in these circumstances where a person is subject to the curtailment of their rights and the potential loss of their liberty through the force of the government, that in that instance, when it proceeds through that court system and through the appeal of that, that that claim does not actually accrue until, in this instance, the court of appeals made their decision on the violation of those rights. Now there is some discussion in my opponent's brief concerning collateral estoppel. Certainly those arguments have merit, but I would point out to the courts that the state of New Mexico at that juncture had the opportunity to go to the high court of that state and did not. So to argue that that case was improperly decided, but they chose not to pursue that on the next stage of the appeal in the state court system, I think that tends to cut against that collateral estoppel argument. But that's all I'll say on that. What we do have is two courts in New Mexico, first at the district court level, overturning the Board of Licensure's decision, which I believe occurred in January of 2011. So there's an argument that this case accrued, certainly when the district court overturned the Board of Licensure's decision. I think that the equitable principle is at stake here. Certainly, and there's also some confusion, I would note, in the briefing of the appellant MRGCD concerning equitable estoppel versus equitable tolling. Yes. There's certainly, when you look at equitable tolling, an argument to be made that when the state took and appealed that case to the Court of Appeals, that that was an act of tolling, that it took something, an essential fact needed for this case, for the claim, out of the realm of the plaintiff at that juncture. And it really wasn't until the state chose not to take it to the Supreme Court that we ended up with a fully ripe and accrued statute of limitations. And at that point, it accrued, and I believe that it started. So as I've said, our argument really does hinge on these principles and extending heck to this type of an instance. Now, I would anticipate that the Court would have some concern and some questions regarding, well, this isn't really necessarily a criminal conviction. This doesn't really fit into that box. I think that it fits more squarely into that box than it does the other side of a government action to deprive somebody of their First Amendment rights by perhaps excluding them from a meeting or some other form of censure. What are the facts that you feel that require us or should not require us, but that we should exercise whatever limited discretion we may have to proceed to hear the case on the merits? What are the compelling facts, these equitable facts you're talking about? I think that in order to extend heck in the circumstances, you look at the nature of the proceeding in front, the nature of the underlying proceeding. And I believe it is more akin, and the facts are that it is more akin to a criminal proceeding than it is to some other type of civil proceeding. It's a civil prosecution. There's the loss of property. There's a fine of $2,500 that was ultimately assessed plus costs of $2,500. I think that's more akin to a criminal proceeding than it is to some other type of infringement upon a First Amendment right. So the facts that I think really warrant this discussion here today are those facts. It fits into this box rather than that box. Going further, I think that if you look at the facts, the other side of this is an equitable principle. Asking an individual to incur the cost of not only maintaining attorneys in an underlying proceeding, but also maintaining attorneys to start a new proceeding, I think is prohibitive to the average citizen. I think that's an equitable factor this court should consider. Dr. Turner, frankly, didn't have the ability to maintain two actions. And he didn't know for sure that he had an action, which is the other equitable factor I think that I would look at. At some point, there's a belief that the state's action is correct, that under their powers to regulate the profession, that they were acting appropriately. And it wasn't really until first the district court, but more importantly, the appellate court said, no, the exercise of those rights that the state has to regulate that profession infringed upon this constitutional right. I believe that the fact that the court of appeals found that is a fact that weighs in terms of actually presenting this case in this instance and allowing for HEC to be applied and extended to this case. What level of detail did he engage in, in saying let's use riprap on a part of the structure? Did he proceed to the level of doing engineering drawings and dimensions and specifications? Or did he, as a matter of policy, just say it just seems to me that this is a case where riprap is an appropriate remediation effort that could be undertaken? And I think that's a very appropriate question, Your Honor. He Dr. Turner is an extremely intelligent individual. And I'm forgetting the mathematical principles he used, but he actually used a mathematical equation in the terms of his presentation. At the top of the presentation he presented to the board, it says very clearly in big bold letters. I'm not an engineer. The board should seek the advice of a licensed engineer. But I do understand how to do math and I can calculate slow equation. The Manning equation is what he used. It came back to me. That certainly is above and beyond what I can do in math. I mean, I'm lucky. He started out with a disclaimer. He absolutely started out with a disclaimer. And he maintained that disclaimer throughout all of that. The point of the underlying action was that the chief engineer and the press secretary working for the state or for the chief engineer for the district did not like the fact that he was highlighting perhaps improprieties. And that's where we get to the point of a vindictive prosecution is that his whistleblowing in that instance was unpopular. And so they set about to silence him. They set about to silence him through a civil prosecution from the board of licensure on which the chief engineer had previously said, or I believe still sat and also turned to the press and went out in an effort to compare Mr. Turner to Dr. Turner to I believe it was Mussolini at one point and Hitler and accused him of those types of things. In an absolute effort to chill his speech, a person of absolute normal infirmities would have been very concerned about the threat of a big fine, certainly the threat of the retaliation. And they really do fit within. And we put this in the complaint. It does fit within those those four corners of vindictive prosecution, misuse of a legal process for malicious prosecution or and all of it culminating in a retaliatory action to chill his first speech. And that's the underlying principle of this case that was in the complaint that we do believe was put. So with that, no further questions. I deserve the remainder. I'm Jeff Baker. I represent the district. Those include Dennis Domazowski, who was the public information officer and Sue Shah, who was the executive director. I will tell you that I've never before had a case. Hover a little closer to the microphone. Thank you. I've never before had a case where opposing counsel has conceded that he essentially does not have a case. He wants this court to act as something extra judicial, rewrite the law, extend the law in ways that he says in in furtherance of justice. I would say there's no reason to even engage in that type of exercise. There are some courts that have extended heck to the civil context. But all of those cases involved detention. It was the case in California where somebody was civilly committed to a facility for sexual predators. There was another case where somebody was it was a an alien immigrant. There's I think the way the court described this person who was protesting his detention. There was another case where there was good time credits that were being denied. So each of those non-criminal cases involved detention. Yeah. But the point I'm making is that that extending the law is not an extra judicial act, is it? Well, my view is that the way that Mr. Dunn wants this court to do it would be a not a small step, not an incremental step, but a major step. Essentially what I heard him say is he wants a First Amendment exception to accrual of actions. In this particular case, we know that Dr. Turner is well educated. We know from his litigation history it's in the complaint, an amended complaint. He is no stranger to litigation. He was represented by counsel throughout the administrative proceedings. So this is not a situation where equitable tolling would be involved. He was not deceived by anybody as to what was going on. He was not misled by anybody as to what was going on. He was aware every step of the way. He knew when Dennis Dombrosowski sent that complaint to the Board of Licensure. He knew when the Board of Licensure had its hearing. He was aware when it issued its decision. And the dates are important. The BOL decision was February 26, 2010. That was more than five years before this lawsuit. He knew that the district court reversed the BOL decision and parenthetically added, by the way, I think your First Amendment rights were violated. That was on January 3, 2011, more than four years before this lawsuit was filed. So this is not a situation where somebody is tricked, misled to sleep on his or her rights. He was represented by counsel. It was not Mr. Dunn. So this was not Mr. Dunn's mistake, but Mr. Dunn is now here saying, I don't really have an explanation other than what I hope is that this court will take the next step and extend heck into this situation. And the closest he's got, in terms of an analogy to the criminal situation, is that Dr. Turner was potentially subject to a $2,500 fine. Now, that's what the penalty was imposed by the BOL. They said, you're going to pay a $2,500 fine, and you're going to pay the administrative costs of another $2,500, $2,600. Dr. Turner immediately was able to not only appeal to the district court, but to get the district court to enter a stay. So this criminal penalty, quasi-criminal penalty, was prospective, speculative. And then the question becomes, is a civil penalty a criminal penalty? If this court, for example, were to sanction me for some reason that did not involve criminal contempt, would I have stepped over into the criminal side of things? I mean, sometimes civil bodies, like boards of licensure, have the ability to fine people who go off the reservation. And this is what Dr. Turner was accused of doing. He was successful in overturning that decision, and that's fine. But the question keeps coming back to, why did he sit on his rights? He knew, and as I read the decision from Judge Brack, Judge Brack thought the BOL decision from February 2010 was the seminal event. We could also look at what the district court said, saying, I'm going to reverse what the BOL did, and by the way, in my view, your First Amendment rights were violated. At that point, the bells, the whistles, the sirens ought to have been going off and saying, your cause of action is not only right, it is really right. And so the question is, when you have an accrual of action, how do you decide? What does he know, and when does he know it? Dr. Turner knew every step of the way what was going on. There was no subterfuge. Give us some chronology to add timelines to your comments, please, counsel. I think Mr. Domrosovsky filed his complaint in 2006. No, I'm sorry, that was in 2007. Mr. Turner, you mean. No, Domrosovsky, the administrative complaint to the BOL, saying, this guy is practicing engineering without a license. That just seems to be, given that he started out with the proposition, I am not an engineer, I am not a tax lawyer, you should consult your professionals before you act on this conduct, then to charge somebody under that kind of scenario, practicing law without a license or accounting without a license, or in this case engineering, it seems a little extreme, doesn't it? I'm not here to defend the merits. All right, you've already lost on that point. But going forward, and I do not represent the BOL, Mr. Marcus is here to represent them, they found after a hearing and evidence and witnesses and everybody at that hearing was represented by counsel, they found that Dr. Turner had violated New Mexico law with respect to practicing without a proper license. I think that begs the question that I asked you, but go ahead. So I'm not here to say what they did was smart. Right. But it's what they did. And Dr. Turner was aware that that's what they did. And then one goes to district court and the district court vindicates Dr. Turner's position and adds, and oh, by the way, not only were you not practicing without a license, I think your First Amendment rights were violated. That came down what date? January 3, 2011. January 3? 2011. All right. More than four years before the lawsuit was filed. Now, we all know, everybody agrees that in New Mexico, the statute of limitations for a 1983 claim for a federal claim is three years. Dr. Turner, who had good lawyers, and Dr. Turner, who was a very intelligent, educated man, he knew he could look at the calendar. He sat on his rights. This lawsuit was not filed until April 2015. I want to cede the rest of my time to Mr. Marcus, because he represents the Board of Licensure and the individual defendants associated with them. All right. Thank you, Your Honors. May it please the Court. Larry Marcus on behalf of the State Appellees, Romero and Etoite of the BOL, and Smith of the Attorney General, State Attorney General's Office. I want to say at the outset that the State Appellees adopt all of Mr. Baker's arguments regarding the statute of limitations. They apply equally to the State Appellees and our grounds to affirm the district court decision. In addition, I want to call the Court's attention to two other arguments that also independently clearly support the affirmance of the district court's decision. First is absolute immunity. Mr. Romero is entitled to absolute judicial immunity. Ms. Smith and Mr. Etoite are entitled to absolute prosecutorial immunity. Further, even if they are not entitled to absolute immunity, they are certainly entitled to qualified immunity, Your Honors. I want to note that the district court in its decision, it based its dismissal of all three of the State Appellees in part, at least in part, on one or more of these immunities. However, Mr. Plaintiff, Mr. Dunn, attorney for Plaintiff Appellant, did not mention any of, did not mention the immunities at all in his briefing, did not mention it prior, in his prior, the prior portion of the oral argument. Therefore, under the, it is clear that he's waived, that he's abandoned his right to contest these issues. Dixon v. City of Lawton, Oklahoma, there's a, there's a footnote in there, collecting cases saying that if you don't raise it in the briefing, you abandon the issue. Moreover, even if he hasn't, he hadn't abandoned the issue, it's clear that each of the State Appellees is entitled to absolute immunity. Mr. Romero was the, he was the head of the Engineering Committee of the Board of Licensure, and he, according to the complaint, drafted the order saying that Mr. Turner had practiced engineering without a license. As such, he was a decision-maker. He was akin to the, to Parsons in the Gutman v. Calsa case where the, a decision-maker, a hearing officer for a New Mexico licensing board, in that case it was the medical board, was found to be protected by absolute judicial immunity. What he was doing was he was acting in a quasi-judicial role, and therefore any absolute immunity applied to him as well. Secondly, E. Tuarte, Mr. E. Tuarte, he was the executive director of the Board of Licensure, and he was the one who drafted, who prepared the notice of violation, notice of contemplated action, which triggered this, these proceedings in question. If we were to rule in your favor on the statute of limitations issues, does all this all drop away? If there's another, if there's other grounds for ruling in our favor on the statute of limitations, then that becomes moot, yes, yes, Your Honor. All of these issues become moot. They become moot if the statute of limitations is, if we prevail on the statute of limitations, Your Honor. The, Mr. E. Tuarte, he was the executive director. He prepared the notice of violation. As such, he was in the role of a prosecutor. He was analogous to the prosecutor at Pfeiffer versus the fire insurance company, the Hartford Fire Insurance Company. It's well settled that an agency official who initiates an administrative enforcement action is entitled to absolute prosecutorial immunity because his role is analogous to a prosecutor, and that's what he did. He initiated the, he's an agency official who initiated the administrative enforcement. And Ms. Smith, all she did was appeal the decision. When the district court reversed the BOL, as an assistant attorney general, she appealed the decision on behalf of the BOL to the New Mexico Court of Appeals. As such, she's also entitled to prosecutorial immunity because, again, Pfeiffer, a state attorney, who pursues an administrative enforcement action, which is what she was doing, that is also, there's absolute immunity regarding that. So they're all entitled to absolute immunity. Further, even if they weren't, they're all entitled to qualified immunity because there has to be a clearly established, the violation has to be clearly established that it was a violation. Your Honors, as you know, there has to be a Tenth Circuit or a Supreme Court case on point, or the weight of other circuits has to demonstrate that this was a violation. There was nothing in Plaintiff's Briefing with any prior Tenth Circuit or Supreme Court case saying that an agency that determines that someone who's practicing a professional battle license is subjected to, potentially subjected to First Amendment liability. And there was nothing in the Court of Appeals, New Mexico Court of Appeals decision. They based their decision on the, on distinguishing basically another state case, State v. Ongly, in which they held that a medical board did not violate the First Amendment rights. So this was essentially unprecedented. It was a matter of first impression, essentially, and entirely unprecedented. There was, therefore, there's no clearly established right. Secondly, it's also well known that, it's well settled that states have the broad right to regulate professions. They've upheld bans on in-person solicitation of business by attorneys. They upheld even a requirement that tour guides be licensed. The City of New Orleans requires tour guides to be licensed, and they, the Eastern District of Louisiana upheld that. There are other cases, bans on gay conversion therapy have been upheld. Your Honors, there's a long, long history of states having the broad right to regulate licensed professions, particularly learned professions. The allegation here is a little broader than that, isn't it? It's that you stepped out of your bounds, almost like in an ultra-virus situation, and proceeded to, the allegations are that you stepped out of these bounds and started to use these authorities to silence speech, to maliciously prosecute, and several other allegations. You're not absolutely immune from all of those claims, are you? Your Honor, my time is up, if I may answer the question. Your Honor, I believe that absolute immunity still exists, because they were acting within their jurisdiction. Their jurisdiction was to regulate engineering, and including determining if someone practiced without a license. Thank you very much. Thank you, Your Honor. Thank you very much, Your Honors. No questions? All right. Do you have some remaining time, Counsel? Just very briefly, Your Honor, and I'd invite the Court. You have the time, but it's yours to use. Thank you. And I'd invite any questions from the Court, based upon my opposing Counsel's comments first, if there are any that I can address. If not, very briefly, to touch on the— Do you agree that if you're out on the statute of limitations, everything else drops away, that everything else goes away? I agree, Your Honor. I think that's apparent from our briefing, that that is the threshold question. But to touch on the comments made by Mr. Marcus just before he stepped down in response to your question, I think your question, Judge Lucero, regarding this is a little bit beyond that absolute immunity, that's what we put in the complaint. That's the conduct outside of that decision-making for the quasi-judicial immunity, or outside of that prosecutorial role for the Attorney General or for Mr. E. Tuarte. I think that's the conduct that we're talking about, which would, of course, then get to the question of qualified immunity. And to say that the First Amendment right to exercise your speech is not a clearly established right and that they had no idea that what they were doing was not going to violate that right, I don't think holds a lot of water. No pun intended for the fact that this is an irrigation district that's doing it. The only other thing that I would touch on with my remaining time would be the statement by Mr. Baker, that I'm asking you to throw the doors wide open. I'm not. Or not. That wouldn't be appropriate. We are asking for a narrowly tailored exception, similar to Heck. And it's not we're going to throw it all the way. It's that we want you to take a look at this particular proceeding and look and see if this particular proceeding doesn't fit within the Heck rubric from the United States Supreme Court. And so what about the contours of this proceeding would allow for that then? I mean, if it's not criminal, if it's not civil plus detention, it's not either one of those. So what is it about the contours of this proceeding that would bring it within the scope of Heck? Mind you, noting that Heck originates from the idea that the bar was designed to keep plaintiffs from circumventing habeas. I mean, in other words, they would sue in 1983 as opposed to using habeas. Well, habeas involves detention. And so if that's not at play, what about this makes this akin to Heck? I think that's absolutely the threshold question in applying Heck. And I would argue that, and we did in our briefing, so I'll acknowledge that, that the threat of the detention, the use of government force to deprive them of the property, but a failure to adhere to that and to potentially be subject to detention under the criminal statutes is why this is more akin. You mean for not paying the fines? For not paying the fines. That's what I would argue with the Court. Thank you. Thank you, Counsel. Case is submitted. Counsel are excused.